MISS LOTTIE GRACE DAUDELIN,  :  No. 8740

versus  CO[U]RT OF APPEAL,

FRANK D. COSTLEY  :  PARISH OF ORLEANS

---

WILLIAM A. BELL, JUDGE;

---

January 2, 1923.

Court of Appeal
Parish of Orleans
FILED
1/9/23.
Stansbury

BY: WILLIAM A. BELL, JUDGE:

This is a suit by direct action for damages to plaintiff's automobile, and by reconventional action, for damages to defendant's automobile, both of which were damaged by collision in Audubon Park in the City of New Orleans.

Each of the litigants charges the other with gross negligence, and each claims the other to have been additionally liable under the doctrine of last clear chance.

The material allegations of the pleadings herein filed need not be noted to any extent, the suit being predicated largely upon issues of fact, to be determined from the testimony adduced at the trial in the lower court.

Defendant, and plaintiff in reconvention, has answered the main suit by pleading an exception of no cause of action, and answering the merits by pleading particularly the violation on the part of the plaintiff of the general laws of the road, and the City ordinances of the City of New Orleans. The ordinances pleaded were made part of defendant's answer, and offered in evidence at the trial of the cause.

There was judgment in favor of plaintiff in the First City Court of New Orleans, for the sum of $68.54, the defendant's claim in reconvention, for the sum of $129.40 being dismissed. From this judgment defendant, and plaintiff in reconvention, has appealed. The only two eye-witnesses to the accident were plaintiff and the son of defendant. The respective amounts claimed by the litigants constitute actual damages to each of the automobiles, and the bills for repairs of each offered in evidence are not disputed.

We find that the accident occurred on January 12, 1922, at about four o'clock P.M., in Audubon Park, at near what is known as the exit leading from the Park to Magazine St. Plaintiff was driving her car through the upper side of Audubon Park from St. Charles Ave. and around the curve in the Park towards the Magazine St. exit. This roadway upon which plaintiff was

25

travelling is a public thoroughfare running through the Park, and is used, or intended, only for vehicle traffic. For more than a city block's length, this roadway runs from the upper side of Audubon Park to a point known as the Tea House in said Park, and to this extent the road is parallel to Magazine St. We find that while plaintiff was driving her Ford car down the Park roadway parallel to Magazine St., and within a short distance of the exit to Magazine St., she noticed the defendant's car coming, or about to come, out of the inner roadway loop which runs in front of the Audubon Tea House, and takes a returning direction to the Magazine St. exit.

There were two plans, or sketches, and two photographs, offered in evidence. One of the sketches was offered by plaintiff and the other, together with the two photographs, was offered by defendant. There is considerable variance between the sketch of plaintiff and that of defendant, and we find, upon examination of the testimony, that the sketch offered by defendant is a more correct plan of the locus in quo. The photographs, marked "Defendant I. and II." respectively, as well as the sketches, show that part of the park at the intersection of the exit and that of the driveway, where there is an electric light pole. The pole is midway between the extreme sides of the exit, but does not in any manner stand in, or obstruct, the driveway in the Park. From the point of the electric light pole to the exit point of the loop, we find the driveway to be a two-way thoroughfare; and that the balance of the driveway, as well as the entire loop, running from the Tea Room back again into the driveway, is a one-way thoroughfare, running from the direction of Magazine St. towards St. Charles and back again in loop towards Magazine St.

It is contended by the plaintiff that the stretch of roadway upon which she was driving, from the electric light pole to the exit point of the loop, is a one-way drive, and that this distance is about 30 ft. On the other hand, defendant contends that this same distance is 110 ft., and that the driveway here is not a one-way, but a two-way traffic thoroughfare.

We find that the defendant's contention is the right one, and we further find that the width of this two-way thoroughfare from the point of the accident to the Magazine St. side of the thoroughfare, is some 20 odd feet. The width just mentioned gives to vehicles going towards the Tea House into the loop, or out of the loop into the thoroughfare in the direction of Magazine St. ample room to pass each other, and that vehicles going towards the Tea Room and into the loop should, under the general law of the road, as well as the traffic ordinances of the City of New Orleans, keep to the right of said road, that is, towards the side nearest Magazine St., and that those vehicles coming out of the loop, and for the space of 110 ft. should also keep to the right, going in the direction parallel to Magazine St., and until turning to the left for purposes of exit from the Park.

The sketches of both plaintiff and defendant show that the point of the accident was in the grass directly off of the loop, and at the point of intersection of the main thoroughfare with the exit point of the loop. The evidence establishes conclusively that the primary cause of the accident was the plaintiff's failure to keep well to the right while going, as she testifies she intended to go, towards the Tea House. She testifies, however, that before reaching the electric light pole in question, she saw the defendant's car well to the left of the exit from the loop, and that noticing the approach of defendant's car, she turned well to her left, and checked the speed of her car until she found that defendant's car was dangerously near her, at which moment she accelerated the speed of her car, at the same time turning her car still further to the left. We find that she was undoubtedly confused, as she herself testifies, and that her failure to pursue her course well to the right was the sole cause of the accident.

We further find that the driver of the defendant's car at all times observed the rules of the road and the City ordinances, by keeping to his right, although by so doing, the inevitable accident occurred. We also find that the doctrine of last clear chance can only be applied against plaintiff for the

reason that she admits having increased her speed, and also having continued to pursue her unlawful direction to the left, when she could and should have turned to the right at the last moment before the cars came into collision.

Had plaintiff at all times kept to the right of the road, and had she particularly done so even after believing that defendant's car was dangerously near her, the accident would not have occurred. Failing of this observance of the rule of the road, as well as the ordinances, she, and not defendant, must be found at fault. The driver of neither car was exceeding the speed limit allowed under the law, and hence the accident can only be attributed to the fact that plaintiff failed to keep to the right while in the 110 ft. of two-traffic roadway upon which she was travelling.

The City ordinance which is rightly invoked by defendant provides in Section I. thereof, that the provisions and regulations of the ordinance shall govern the manner of use on the public streets and thoroughfares of the City of New Orleans, of automobiles, etc. There was some attempt in the trial of the case to prove that the driveways in Audubon Park and the traffic thereon, were governed by rules and regulations of the Audubon Park Commission, but in this respect the testimony offered was, in our opinion, properly rejected. The witness introduced for this purpose by plaintiff, showed clearly that he had no official knowledge of the rules of the Commission.

There being no evidence before the Court of the power of the Audubon Park Commission to make any rules or ordinances different from those enacted by the City Commission Council, and the ordinances of the Council not differentiating in any way the traffic rules applicable to the public streets as distinguished from driveways in public parks, we find it proper to hold that the thoroughfares or public driveways in the public parks in the City of New Orleans, are to be governed by the ordinances relative to traffic throughout the City.

From our appreciation of the facts of this case, and from their application to the City ordinances which we

28

consider the law of the case, we are of the opinion that the judgment of the trial court is erroneous, and that there should be judgment for defendant in the sum prayed for in reconvention.

It is therefore ordered, adjudged and decreed, that the judgment herein appealed from in favor of plaintiff and against defendant in the sum of $68.54, and rejecting the demand of plaintiff in reconvention, should be, and the same is hereby reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of Frank D. Costley and against Lottie Grace Daudelin, in the sum of $129.40, with legal interest thereon from date of judgment until paid, and for all costs in both courts.

<u>JUDGMENT REVERSED.</u>